JEFFRIES COAL COMPANY, a CORPORATION, PLAINTIFF AND APPELLANT, v. MONTANA STATE INDUSTRIAL ACCIDENT BOARD, ET AL., DEFENDANTS AND RESPONDENTS.

No. 9369.
312 Pac. (2d) 128.
Submitted April 24, 1957. Decided June 4, 1957.

512

Mr. Ralph J. Anderson and Mr. Stanley P. Sorenson, Helena, Mr. G. J. Jeffries, Roundup, for appellant.

Mr. Arnold H. Olsen, former Atty. Gen., Mr. H. Moody Brickett, former Asst. Atty. Gen., Mr. Forrest H. Anderson, Atty. Gen., and Mr. William F. Crowley, Asst. Atty. Gen., for respondents.

Mr. Ralph J. Anderson and Mr. Crowley argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment for the defendants in an action to recover an assessment made by the defendant and re-

spondent, Industrial Accident Board and its members, hereinafter referred to as the Board.

The assessment had been paid under protest by the appellant, Jeffries Coal Mining Company, hereinafter referred to as the Company.

The Company operated a coal mining business in Roundup, Montana. The Board caused an audit to be made of the Company's books, and as a result thereof, an assessment of ten percent of the sum of $6,902.25 or $690.23 was made. The audit covered the years 1945, 1946, 1947 and 1948. The sum of $6,-902.25 was alleged to have been omitted from the payrolls of the Company in computing the amount due the Board under Compensation Plan No. 3 of the Workmen's Compensation Act of Montana, R.C.M. 1947, section 92-1101 et seq. The Company paid the assessment and filed its protest which read in part as follows: ''During all of said time, the coal of this protestant was transported by one E. Hutchinson, under a contract entered into in the year of 1944, for the period of one year, and thereafter renewed annually by mutual agreement between the parties. A copy of which is hereto annexed and marked 'Exhibit A'; and that under the terms and provisions of said contract, the said Hutchinson was an independent contractor of this protestant; and that the compensation so paid is not subject to a payroll tax or assessment under the Workmen's Compensation Law of the State of Montana, as in such cases made and provided; and in the event this protest is not allowed by this Board, and the sum of $690.23 refunded to this protestant, you are hereby notified that suit will be brought against this Board to recover the same in some court of competent jurisdiction.''

The protest, above-mentioned, and the contract mentioned therein were attached to the complaint and made a part thereof. The Company alleged in its complaint that the sum of $690.23 represented an assessment for and on account of compensation paid to truckers for the transportation of coal during the years 1945 to 1948; that during said years the Company's coal was transported by one E. Hutchinson, under a contract entered into

in the year 1944, for a term of one year and thereafter renewed annually by mutual agreement of the parties; that under the contract the truck drivers were the employees of E. Hutchinson and were not employees of the Company and the compensation paid to the truck drivers was not a part of the payroll of the Company, and therefore was not subject to assessment by the Board against the Company; that said assessment was arbitrarily, erroneously, unlawfully and illegally demanded.

The Board, by answer, admitted the assessment and the protested payment, but substantially denied everything else. Trial was had with a jury, the verdict being for the Board and judgment was entered accordingly.

The Company assigns fourteen specifications of error which go to errors in the evidence, errors in instructions to the jury, and that the verdict was contrary to the evidence and to the law.

The issue as established by the pleadings was whether or not an independent contractor relationship existed between the Company and a certain Mr. Hutchinson so as to come within the exception provided by R.C.M. 1947, section 92-411, which is in part as follows:

"*Employee and workman defined.* 'Employee' and 'workman' are used synonymously, and mean every person in this state, including a contractor other than an 'independent contractor' who is in the service of an employer as defined by the preceding section, under any appointment or contract of hire, expressed or implied, oral or written, * * *''

R.C.M. 1947, section 92-438, defines the term "independent contractor'' as used in the Act as follows:

"*Independent contractor defined.* 'An independent contractor' is one who renders service in the course of an occupation, representing the will of his employer only as the result of his work, and not as to the means by which it is accomplished."

The appellant's specifications of error, going to rulings on the evidence, will now be considered.

Specifications Nos. 8 and 9 assert error in the admission of

respondent's Exhibit B, which was a letter from the president of the Company to the then chairman of the Board. It is asserted that the letter was an offer of compromise and as such was not admissible in evidence.

The pertinent part of the letter complained of is as follows:

"As I recall there is involved in the present pending action a disputed assessment of some $600.00. This dispute as I recall, represents the difference between the proper rate to be charged truck drivers. The regular truck driver rate is not questioned, but we have and do seriously question the policy heretofore followed of levying miners rate for truck drivers. Our position is based upon practical consideration as well as a fair interpretation of the law as we construe it. In times past there seems to have been a rather concerted act to gouge irrespective of the merits of the claim. This, obviously with the thought that the unnecessary trouble and expense involved would prompt protesting taxpayers to waive any irregularities. Frankly I feel highly gratified that the change in policy permits the disposition of these various questions upon their merits.

"While I was last in Helena I suggested that we should dispose of this litigation. If the attorney general feels the case should be tried, why not have it tried and presently processed for the ultimate determination. If after full investigation he feels there is merit to our claims, and we certainly do, then this fund could be released and be applied upon account."

A reading of the afore-mentioned letter does not reveal any ▬ offer or compromise. The letter was introduced for the purpose of impeaching testimony of Mr. Jeffries, president of the Company. Mr. Jeffries testified that the truck drivers were carried on his payroll, that he hired them, fired them, directed them, but refused to admit that they were employees of the Company. The letter is certainly an acknowledgment to the contrary and was properly admitted. See Lenahan v. Casey, 46 Mont. 367, at page 379, 128 Pac. 601.

Specifications of error Nos. 10, 11, 12 and 13 go to the intro- ▬ duction of evidence as to union negotiations and agree-

ments. Again, the Board's position, as raised by the pleadings, was that the truck drivers were in fact the employees of the Company, and not, as contended by the Company, the employees of an independent contractor. Certainly the introduction of evidence as to negotiations between the union and the Company concerning these very same truck drivers was material and relevant to the proof of the issue.

The Company was relying upon a written contract with one Hutchinson, a wholesale and retail coal dealer of Seattle, Washington. This contract attempted to set up Hutchinson as an independent contractor. The president of the Company testified that the contract, although for only one year, had been continued annually thereafter. The Board denied the existence of the contract and sought to prove this by the deposition of Hutchinson in which he, the supposed trucking contractor, denied having entered into such a contract. In addition, Hutchinson testified that he had never operated the trucks in any manner. We think an expert proved by handwriting comparison that Hutchinson did in fact sign the contract. However, this does not affect the outcome so far as the evidence is concerned. A reading of the record, completely aside from the contract, discloses that the Board proved that in spite of the written contract, the drivers were in truth and in fact employees of the Company. This very element of proof was established by the appellant.

The appellant then cites errors in the instructions to the jury in specifications of error Nos. 1 through 7.

The court instructed the jury as follows in Instruction No. 13:

"You are instructed that the defendant has introduced what is known in the law as a deposition, which is evidence given by a witness under interrogatives before a person commissioned by this court to receive the evidence. This deposition is to be given the same weight, and fair consideration, as if the witness were in court and gave such testimony in open court."

The deposition in question was that of Hutchinson, previously

mentioned. In 32 C.J.S. Evidence, section 1032, pages 1075, and 1076, the rule is stated as follows:

"The weight and probative force of depositions are matters to be passed on by the triers of fact. According to some decisions, testimony given by deposition has the same probative force as if given by the deposing witness at the trial. Accordingly, the jury may be instructed that depositions should be given the same weight as if the absent witnesses were personally present testifying; and it is error to instruct a jury that, as a matter of law, testimony embodied in depositions is entitled to less confidence than would be the case if the testimony had been given orally at the trial. According to other decisions, testimony given by deposition, especially by deposition taken ex parte, is to be deemed of inferior value to testimony delivered viva voce in the presence of the trier of facts. So, it has been held that an instruction that evidence by deposition is to receive the same weight as that in open court is erroneous as a charge on the effect of the evidence; but the jury may be told that testimony by deposition is legal evidence to be duly considered."

The appellant urges that the second of the two rules set forth by the author is the better rule. We do not need to choose which is the better rule in this case. In 20 Am. Jur., Evidence, section 1179, at page 1029, the same rule is stated thusly:

"Oral testimony of a witness given in open court is usually regarded as having greater probative force than a mere deposition, although there is no positive rule requiring such testimony to be given greater weight than a deposition. The surrounding circumstances may be such as to accord both classes of evidence equal value."

In addition to the foregoing Instruction No. 13, the court gave its Instruction No. 2, which read as follows:

"The Court instructs the jury, as a matter of law, that where two witnesses testify directly opposite each other on a material point, and are the only ones that testify directly to the same point, you are not bound to consider the evidence evenly balanced, or the point not proved; you may regard all the sur-

rounding facts and circumstances proved on the trial and give credence to one witness over the other if you think such facts and circumstances warrant it."

The Court also gave Instruction No. 3, as follows:

"The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact in this case. A witness is presumed to speak the truth. This presumption, however, may be repealed by the manner in which he or she testifies, by the character of his or her testimony, or his or her motives, or by contradictory evidence, and the jury are the exclusive judges of his or her credibility."

We think that these three instructions taken together are not such a comment by the court upon the weight of the evidence given by one witness as would confuse or mislead the jury in any manner prejudicial to the plaintiff.

Counsel for the appellant cite the case of State v. Kessler, 74 Mont. 166, 239 Pac. 1000, 1001, wherein this court said:

"* * * it is the province of the jury to pass upon the weight of the evidence and the credibility of the witnesses, uninfluenced by any suggestion from the court as to the relative weight of the testimony of the different witnesses (State v. Paisley, 36 Mont. 237, 92 Pac. 566). So long as judges are not permitted to comment on the weight of the evidence, this must be the rule."

We have no quarrel with the rule as announced in State v. Kessler, supra, nor that announced in Wastl v. Montana Union Ry. Co., 17 Mont. 213, 42 Pac. 772.

We believe that taking together the three instructions heretofore quoted they are not such a comment upon the weight of any particular witness' testimony as to be prejudicial. Appellant's counsel relies heavily upon the use of the words *same weight,* in the court's Instruction No. 13. However, we do not feel that this is a direct comment on the weight of the testimony of the particular witness such as would confuse or mislead the jury.

We think that there was sufficient qualification and explana-

tion found in the other instructions so that when read together, and as a whole, it appears the issues were fully and fairly submitted to the jury.

Appellant next contends that the giving of Instruction No. 16, which reads as follows, was error:

"You are instructed that the fundamental basis of workmen's compensation laws is that there is a large element of public interest in accidents occurring from industrial conditions, and that the economic loss caused by such accidents shall not necessarily rest upon the public but that the industry in which the accident occurred shall pay in the first instance for the accident."

This was objected to on the ground that it was an abstract proposition of law which is not in any way here involved. Abstract instructions may be given only when the facts of the case are few and simple, and the general principle of law may be easily applied. Even then the practice is subject to criticism. As was said in Newer v. First Nat. Bank of Harlem, 74 Mont. 549, 557, 241 Pac. 613, 615:

"At best, plaintiff's offered instruction No. 2, which the court refused to give, was the bald statement of an abstract proposition of law, without any attempt to connect it with the evidence in the case or any rule laid down in other instructions given by the court. When the facts in a given case are few and simple and of such a nature that general principles of law may be easily applied, the giving of an instruction embodying abstract propositions, though open to criticism, is not reversible error."

In this case the facts are few and simple, and the abstract proposition contained in Instruction No. 16 is not such that the jury would be misled to the prejudice of the appellant. See Russell v. Sunburst Refining Co., 83 Mont. 452, 272 Pac. 998; Loncar v. National Union Fire Ins. Co., 84 Mont. 141, 274 Pac. 844, and Johnson v. Horn, 86 Mont. 314, 283 Pac. 427.

The Company next contends that the giving of Instructions Nos. 17, 18, 19 and 20, all of which relate to the same mat-

ter, and all of which were given over the Company's objections, was error. These instructions were all on the independent contractor theory of the case. Counsel for the Company asserts that there was no issue raised as to an independent contractor relationship. With this we cannot agree. The protest, the contract, and the complaint itself all set up an independent contractor situation. Certainly it was the main issue of the case.

The appellant also asserts that the giving of these four instructions was in direct conflict and contradiction to the giving of Instruction No. 8 which was to the effect that if the jury found that the Company was operating under a contract with an independent contractor, who in turn employed the truck drivers, that it should be given a verdict.

In the event that the jury did not find such to be the true state of facts, as they evidently did, certainly the instructions as to an independent contractor were proper.

Appellant next asserts that the giving of Instruction No. 21 was error. This instruction read as follows:

"You are instructed that the Industrial Accident Board is not a party to this contract and further that contracting parties cannot bind a third party who is not a party to the contract by their action. In this case the Industrial Accident Board is a third party and therefore, not bound to recognize the contracting parties but may assert its rights against the party employing the laborer."

The issue was whether the truck drivers were the employees of the Company under the Montana laws. Inasmuch as a great deal of testimony concerned whether or not some type of contract existed between the Company and Hutchinson, the asserted independent contractor, we believe it was proper to advise the jury that the real issue was not whether there might be a cause of action under a right of contract allegedly existing or formerly existing between the Jeffries Coal Company and Hutchinson, but who in truth was the employer of the truck drivers. There is nothing confusing about that instruction.

The instructions as a whole were proper, and tended in no wise to mislead the jury.

This court in State v. Bosch, 125 Mont. 566, 574, 242 Pac. (2d) 477, 481, said:

"This court in reviewing the instructions of a trial court will examine them as a whole. While one or more paragraphs standing alone, may be inaccurate or even erroneous, yet if these are qualified and explained by other portions of the charge *in pari materia*, and taken together with them and the rest of the charge, fully and fairly submit the case to the jury, the verdict and judgment should be sustained." See, also, Reynolds v. Trbovich, Inc., 123 Mont. 224, 210 Pac. (2d) 634.

The Company's third grouping of alleged errors was that the verdict was contrary to the evidence and against the law. A review of the evidence in this case, and particularly even that of Mr. Jeffries, the president of the Company, demonstrates that there was sufficient evidence for the jury to find, as it must have found, that the truck drivers were in truth and in fact employees of the Company. All of the evidence introduced with the exception of the written contract itself, indicated without any doubt that the truck drivers were employees of the Company and that the judgment was proper.

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES BOTTOMLY, ANGSTMAN, and ADAIR, concur.